May it please the Court, my name is Lindsay Rowland, a certified law student representative from the University of St. Thomas School of Law. Our supervising attorney, Greg Sisk, is here with us today. I would like to reserve six minutes for my co-counsel on rebuttal. Your Honors, four eyewitnesses provided sworn declarations that Officer Escamilla physically attacked inmate Darrell Harris' Qur'an, throwing it to the ground, stomping on it, and kicking it under his bunk, defiling it and making it unusable by a faithful Muslim. The heart of this case is the desecration of his Qur'an because it offends the religious liberties protected by our Constitution. Today I will focus on Mr. Harris' free exercise claim and as time allows, his equal protection claim. This Court should reverse summary judgment on Mr. Harris' free exercise claim for two reasons. First, under the Lukumi-Trinity-Lutheran line of cases, Mr. Harris was not required to show a substantial burden. Second, even if he was required to do so, he did. The desecration of his Qur'an was itself a substantial burden, and it interfered with his sincerely held religious belief that he must read from his Qur'an daily. In Trinity-Lutheran, the Supreme Court held that a government policy, not a codified statute or regulation, denying a church the opportunity to compete with secular organizations for a playground resurfacing grant violated the free exercise clause. In that case, the Court explained that even though the only burden would have been, quote, a few more scraped knees, it was odious to our Constitution all the same and cannot stand. In Brown v. Borough of Mahaffey, the Third Circuit explained that a city council's spiteful decision to lock a park gate to a religious revival violated the free exercise clause and that no substantial burden was required. The Court explained that applying such a burden test would make petty harassment of religious exercise immune from the protections of the First Amendment. So what do we do with our Connell decision? Your Honor, Connell is distinguishable because that is a pure speech case rather than a physical attack on an inmate's most holy text. So in that case, I would say Connell does not imply here. But don't you think Connell would be at least someone trying to interfere with someone's religious exercise? Yes, Your Honor. However, in that case, the correctional officer was proselytizing while the inmate was attempting to engage in Muslim prayer. However, here, Connell is saying that the officer physically targeted Mr. Harris's Quran for desecration. In that case, it is distinguishable. Furthermore, in Sutton v. Brown of Mahaffey But Connell so Connell said that you have to show a substantial burden. So are you arguing you're trying to factually distinguish it, but as a rule of law, Connell said that a free exercise claim needs to show a substantial burden. Are you saying that Connell is irreconcilable with Trinity Lutheran? Your Honor, Trinity Lutheran was decided in 2017. It's a recent Supreme Court decision. And to the extent that the cases are in controversy, Trinity Lutheran would supersede Connell. However, I think that they can be reconciled because Trinity Lutheran was talking about a government action as opposed to government speech. And so I would distinguish on those grounds. And you think if it's government speech, you have to show a substantial burden, but not otherwise? I think that government speech brings into questions the First Amendment protection of free speech. However, in this case, that is not at issue. What is at issue here is the violation of a free exercise clause in where a government official targets the religious for mistreatment, as the Supreme Court stated in Trinity Lutheran as well as in Lukumi, that is a violation of a free exercise clause even regardless of whether there's a substantial burden. But even if the substantial burden was required to be met, it seems to me if you look at Trinity Lutheran and all these cases, you're talking about an articulated government policy. And here you're talking about the actions of an individual. Isn't that a distinction when we're thinking about whether to apply a substantial burden test or not? No, Your Honor. In Trinity Lutheran, the case involves a government policy, but it's important that it wasn't a codified regulation or statute. Do you have any cases on this point that don't involve a policy? No, Your Honor. Okay. However, we believe that regardless, the statement of the Supreme Court in Lukumi is clear that the free ex — the non-religious persecution principle of the First Amendment is so well-established and so well-understood that few such cases arise in the courts. This is one of those rare cases. This is a case where a government official targeted Mr. Harris as a Muslim inmate for mistreatment. That is odious to our Constitution, and it cannot stand. If we agree with you that there was a substantial burden on his exercise of his religion, we really don't need to get into this question of whether it was required to show a substantial burden, right, because he does anyway? That's correct, Your Honor. And Mr. Harris does establish that he was substantially burdened by Officer Escamilla's conduct. This single episode resulted in two distinct burdens. The first burden is the desecration of his Koran. The second burden is the after-effects. The desecration of his Koran was a substantial burden because as a faithful Muslim, Mr. Harris takes great care to protect the sanctity and the holiness of his Koran. He kept it protected by a cloth cover, which Officer Escamilla unzipped. He removed the Koran from the cover, threw it to the ground, stomped on it, and kicked it under his bunk. The anguish of knowing that a correctional officer had targeted his Koran for mistreatment was a substantial burden. When Mr. Harris discovered the Koran with a boot print on it under his bunk, he wept. That is a substantial burden. Furthermore, the after-effects of the desecration was a further burden. Because of the desecration, Mr. Harris was not able to fulfill his sincerely held religious belief that he must read 10 ayat from his Koran daily. If he does not, he will be counted among the neglectful, and his Koran will not act as his intercessor on Judgment Day and will instead speak against him. That is also a substantial burden. Opposing counsel tries to argue that it is not a burden because Mr. Harris was without his Koran for a mere 10 days. However, that 10 days was a substantial burden. And it is not for the government to decide what has been a substantial burden on his religion. In Holt v. Hobbs, the Supreme Court explained that the proper analysis is whether the government has substantially burdened religious exercise, not whether the claimant was able to engage in other forms of religious exercise. And in Ben-Levy v. Brown, Justice Alito, dissenting from a denial of cert, explained the argument that a plaintiff's own interpretation of his or her religion must yield to the government's interpretation, and that is foreclosed by our precedent. So in this case, the fact that Officer Escamilla absolutely denied Mr. Harris his ability to fulfill his daily obligation of reading his Koran was a substantial burden. Your Honor, I see my time is up. I would like to reserve my remaining time for co-counsel. Thank you. Good morning. My name is Deputy Attorney General Arthur Mark. I represent Officer Escamilla in this case. Your Honors, the Court should affirm for three reasons. First, the record has no evidence from which a jury could find that Officer Escamilla caused a substantial burden on the plaintiff's First Amendment rights. Second, if you move beyond that point, we believe Officer Escamilla is entitled to qualified immunity, a point not reached by the district court, but a point upon which this Court could affirm. Third, with respect to the equal protection claim, he did fail to exhaust, and there was no question that his grievance was insufficient to put the person on notice of a racially or religiously motivated conduct. I'd like to address the substantial burden first. Counsel for Appellant mentioned Holt v. Hobbs, and Holt v. Hobbs is actually a good illustration of what is meant under the Supreme Court and this Court's precedent by a substantial burden on religious exercise. It must be a significant pressure to modify their beliefs or to coerce the individual into acting contrary to their beliefs. Now, in Holt v. Hobbs — Well, that's one way that you can have a free exercise violation, but if someone is stopped from practicing their religion in a way that they think they need to do, that's an infringement on free exercise, isn't it? I do not believe that states a free exercise claim. And, Your Honor, I would point to the Ling v. Northwest Indian Protective Association, which is cited in Appellant's brief. And in that case, the facts were quite interesting. There, the Federal Government proposed to develop a section of road through some religious objectives, and the jurists in this case believed that if that road was built, their ability to practice their religion would be highly impacted. However, the Supreme Court said that is not enough. The substantial burden is not measured by the alleged effects of a government action on a religious objective's spiritual development. There has to be coercion. And so in this case, we have to — But why isn't ruin — when he's incarcerated and he only has one Quran, ruining that so he can't use it, why isn't that coercion? Because there's no loss of privileges, there's no punishment, there's no — How is there no punishment if his Quran is destroyed? Because he's not being compelled to change his beliefs or to modify his beliefs in any way. He's not being allowed to practice his beliefs if he doesn't have his Quran. Your Honor, there is no coercion. Again, in the case of Ling, the Indians were alleging that they couldn't practice their sacred ceremonies in the natural environment if a road went through, but the Court said that is not enough. There has to be specific government oppression. I mean, the First Amendment, fundamentally, it says Congress shall make no law prohibiting the free exercise of religion. So are you saying that the prison could prohibit him from ever having a Quran and ever going to Muslim services because that would just be prohibiting him and not coercing him? That is not this case. That would be a direct — Yeah, but is that what you're — that's the position you're arguing, it sounds like. Your Honor, if the prison prevented Muslim inmates from ever going to services, ever having a Quran, ever having any ability to practice their religion in any I would most likely state a free exercise claim. That is not this case. Was the claim dictated by the amount of time that you prohibit someone from doing it here? Because you're saying that because it was only a 10-day prohibition, that that's not a claim, but if it was a permanent prohibition, that would be a claim. I'm saying if you look at the cases where — the prison cases, where the courts, this Court and the Supreme Court, have indicated there is a substantial burden, there is some sort of official prohibition against the practice. It's not merely an incidental product of government action. Aren't you confusing the Establishment Clause with the Free Exercise Clause? Because what you're arguing now seems to me to be an Establishment Clause argument. Well — I mean, I think you're writing exercise out of the Free Exercise Clause. I don't think I am. And I — there is, I think, some overlap. And I'm certainly not prepared to argue in-depth Establishment Clause precedents today, Your Honor. However, the focus of what I'm trying to get to is that there has to be a substantial burden imposed. There has to be something beyond a, for lack of a better word, incidental effect of the government action. Regardless of how sincerely the person in question or the religious objector believes the government action is impacting their right, there has to be something that the government affirmatively did that actually burdened that religion in a substantial manner and put pressure on them to abandon their beliefs. In this case, none of that — So put pressure on them to abandon their beliefs. That can't possibly be right. I mean, you already said that if they just were prohibited from having a Quran and going to services, that would be a violation. There's nothing in that description that would prohibit them from having their beliefs or forcing them to have different beliefs. If you stop someone from exercising their religion, that has to violate the Free Exercise Clause. Yes, Your Honor, but Mr. Harris was not stopped by anything that Officer Escamilla did from practicing his religion. And even if — Well, he says that that's not true. So, I mean, maybe there's a fact dispute, but he says, I couldn't practice my religion in these 10 days. That's not true. There is no fact dispute as to what he had available to him to practice his religion. It's undisputed. He had several other texts which contain hundreds of verses of the Quran in Arabic. But don't we have cases that say that it's not the court's or the government's choice to decide how someone's religious practice happens? I mean, he says he needs a Quran. He says he needs a Quran. That's correct, Your Honor. However, the cases in this circuit and, in fact, the United States Supreme Court in the Olón case specifically say that where there are other means available for which — No. Olón says that when the prison has legitimate penological interests, it can override religious interests in some context. But what's the legitimate penological interest in destroying his Quran? No, Your Honor. I disagree on Olón because there is no question in the law that if you have other means of religious practice available to you, then the removal of one specific means is not a violation of the free exercise clause. If an inmate asks for a specific version of the Quran, like in the Tenth Circuit case we cited in our brief, and the prison says, no, you can't have that one, but you can have this one, there's no free exercise clause. He had multiple other texts that contained verses of the Quran from which he could have read. He was an inmate imam. The obligation to which he says you must recite those verses every day. So he could have used those other texts to recite those verses. But so you're disputing what really is his Muslim faith by saying he is lying, I guess, when he says he needs an actual Quran? I'm not saying Mr. Harris is lying. I am saying that he had other means from which he could practice his religion, and therefore there was no substantial burden imposed upon his religious exercise rights. And how do you know that that's a fine way to practice his religion? I'm not questioning whether he believes he needs to do that or not. What I'm saying is he had other means from which he could practice his religion available to him. And what truth tells us that that really is another means? What are we going to look at to figure out if you're right? Well, Your Honor, we're not going to go into the truth or the non-truth of what his beliefs were. So what's your basis for saying this is another way to practice his religion? Like, what are you citing for that? What are you relying on to think that? I'm relying on alone. I'm relying on the other cases in this circuit which specifically say if you do not have a substantial burden on religious practice in prison, you can't have a free exercise violation. The Canal case, Your Honor, is particularly on point. In that case, we didn't have just 10 days. We had 23 days of interference with the Muslim inmates' prayers. And I'm sure in that case, he sincerely believed he had to pray on a daily basis, and the interference with those prayers would be just — would be synonymous to the interference that Mr. Harris alleged in this case. There has to be substantiality of burden. The sincerity of the inmate's religious belief cannot be conflated with the substantial burden test. There are two different things. If the burden — if the pleading of a burden, the sincerity of the belief was all that was necessary, the Ling case would have come out differently. But the Court said, no, there was no First Amendment violation there, because regardless of the substantiality of the inmate — of the Indian tribe's beliefs and the sacredness of their land through which this road was going to run, the Court said there was no direct coercion preventing them from, you know, causing them to change their beliefs or impacting their beliefs. The other cases that are illustrative are the ones where the substantial burden is found because the Court says, you know, you want to take a particular benefit, but because of your religion, we're not going to give it to you. There's a direct link between coercion and the religious — Where do you find any of this in the district court's order? Or the magistrate judge's In fact, if I see — if I look at what the magistrate judge did, he didn't reach — he said there was a factual question on that. No, the magistrate judge said there was a factual question with respect to whether or not there was a boot print placed on the Koran. And there was a significant factual dispute in the regard of, of course, what Officer Escamilla did. He emphatically denies all that conduct. So that is — I beg to differ. That's part of it, to be sure. But let me read to you. The defendant relies on Jonathan's statement to prove that Islamic law does not require the plaintiff to read the Koran every day. Plaintiff disagrees. The Court cannot resolve that religious dispute, and it need not do so here. It is well settled that the sincerity of the inmate's belief, rather than its centrality to his faith, is a matter that's relevant to the free exercise inquiry. So I guess my question is, you've made the argument today about coercion, but I don't see anything in the district court record or the magistrate judge's findings that reach that issue. To the extent those are not present in the district court's finding, then that would be a basis upon which this Court could affirm. However, if you look at the district judge's order adopting the Koran, that did get to the point of a substantial burden. And on page 6 of the excerpts, the district court did state, I quote, the simple fact that Defendant Eskamia stepped on Plaintiff's Koran, without showing that such conduct amounted to a substantial burden on Plaintiff's religious exercise, is insufficient to rise to the level of a constitutional violation. Right. The district court, in discussing substantial burden, can find its analysis to the stepping on the Koran, correct? It did, Your Honor, but there was Okay. So your argument is about the substantial burden on the 10-day deprivation. The district court was focusing on something else. Wouldn't you agree? The district court was focusing specifically on proximate clause and causation, basically saying that at most, you can attribute a one-day delay in getting a Koran to Officer Eskamia's alleged conduct. However, the 10-day delay Right. When we're talking about the 10-day period, I just want to make sure we're talking about the same thing. The district court was talking about whether it was foreseeable that the removal of the Koran, the desecration of the Koran, would result in a 10-day deprivation. But unless I'm wrong, the district court, neither the district court nor the magistrate judge, held that the deprivation for a 10-day period was not a substantial burden. The district court did not reach that point. The district court, because it said it couldn't attribute more than a one-day delay to Officer Eskamia's alleged conduct because he had not put in sufficient evidence of proximate causation. In fact, it's undisputed that plaintiff went to the chapel the next day, and because he was an inmate imam, according to his own opposition papers, he was able to get one. But it was unforeseeable that the officer on the door there wouldn't let him in. Then they were on lockdown the next time he went, which is a few days later. Right. But your argument today, basically, is a 10-day deprivation of the Koran is not a substantial burden on his free exercise rights. Given everything else that he had with which to practice no, Your Honor, in this specific factual circumstance, that is an alternative basis upon which this Court could find if it gets beyond the proximate causation issue. And where is the finding on that in the magistrate judges? That he didn't reach that point? No, no. That they had alternate means. The magistrate judge did not reach that particular point, Your Honor. Right. So there are no finding in the record on which we could sustain your theory. No, but there's undisputed evidence in the record which this Court can consider as an alternative grounds should it wish to consider that question. In other words, if you disagree with the magistrate judge's findings, which we believe are correct, that there was no evidence of proximate causation for the 10-day delay, then you can consider other points, such as whether or not a 10-day delay is a substantial burden based on this record. You can also consider the question of qualified immunity, which we believe has been well addressed in our briefing. But again, just to reiterate, the inquiry must be phrased narrowly, and would every reasonable correctional officer have been on notice in January 2013 that a single instance of mistreatment of a Qur'an, whether intentional or unintentional, during a cell search where the Qur'an is not taken and the inmate possesses numerous other religious books at his disposal, would that constitute a substantial burden on his free exercise? Would Officer Eskami have known that? There's no clearly established law on that point, Your Honor. So again, qualified immunity is a sufficient basis on which this Court could affirm. Thank you, Your Honor. Thank you, Counsel. May it please the Court, my name is Francine Kuplic. I'm a certified law student representative. I would like to address two key points on rebuttal. First, I would like to address Mr. Harris's access to religious texts. And second, I would like to address qualified immunity. This case involves a direct violation of the First Amendment. In Lukumi, the Supreme Court said that the fundamental non-persecution principle of the First Amendment is so well understood in the law that such is one of those cases. The Third Circuit held in Brown that a government action, not a policy, violated the First Amendment. In that case, a community organization, a government organization made the spiteful decision to lock a gate for access to a revival meeting space. And the Court held that the government had no legitimate purpose, and no legitimate purpose was served by the intentional deprivation of the rights to religion. So in answer to your question, Honor, in regards to whether Lukumi has been applied in cases where there wasn't a specific law or regulation. That was a policy decision. That wasn't an individual government action by an individual. It was a specific government action. It was not a specific policy decided or written down. Additionally, in regards to access to text, there is no substitute for the Koran. Officer, Mr. Escamilla is required I'm sorry, I apologize. Mr. Harris is required to read the Koran daily as part of his Muslim belief. In the Third Circuit in Sutton, the Court found that the complete denial of text is a violation of the First Amendment. Additionally, in the decision in Garner in the Seventh Circuit, the Court held that denying access to a holy text or ritual items is a substantial burden on free exercise. Furthermore, the Court held that case law clearly prohibits prison officials from intentionally preventing religious practice without penalogical justification of the first exercise, and therefore, the claim may proceed. In regards to qualified immunity. Now, before you get to qualified immunity, the district court concluded that there was no evidence supplied by the evidence of the officer or reasonably the officer could not reasonably foresee that it would result in the deprivation. And that's why he decided to grant summary judgment on that issue. So, what's your response to that? There was no legitimate penological interest served by Officer Escamilla's conduct in this case, and because of that Officer Escamilla is responsible for the actions that occurred after the Quran was desecrated. There is no legitimate penological interest here. And so, relying on tort principles, though, or something else that shows you that he's responsible for anything that followed, whether it was foreseeable or not? Correct. In terms of tort principles, that if the action is deliberate, then the liability for the actions that fall from that, there's a heightened duty to those responsibilities, as opposed to a negligence claim in which it might not be as foreseeable. When it is a deliberate targeted action, which was the case here, when the Quran was thrown onto the floor and kicked under the bed, he is responsible for those actions. And what's your best case for that in the three exercise context? I believe, Your Honor, we would refer back to those cases that completely deprive Sutton and Garner that I previously talked about, which occurred here, the complete deprivation of that sacred text. The prison officials were held liable for any actions that ended up happening in regards to those prisoners being completely unable to access their text, which the equivalent happened in this case. The moment that the Quran was desecrated by Officer Eskimi, it was rendered completely unusable by Mr. Harris. But if a substitute Quran had been immediately provided to him, that would have been satisfactory, correct? We're arguing that there are two burdens here, the first burden being the desecration itself, and then the deprivation of the Quran after it was desecrated. I'm talking about the deprivation period because 10 days is a long time. But the district court, again, let me just quote it, the plaintiff came forward with no evidence on summary judgment suggesting that the 10 days he was a foreseeable consequence of Defendant Eskimi's conduct during the cell search. And then he goes on to say, it's just speculation. Where are we left with that? How do we deal with that? That's the basis of the holding on the deprivation. Not that it didn't substantially burden our religion or the free exercise. Again, Your Honor, I would point you to cases in which, or not cases, I would point you to the fact that this was a deliberate action. There are other cases that are cited in both sides briefs in regards to not access to the Quran for a few days because it had been left in a move or something similar to that. Here we have targeted action by a correctional officer that created the substantial burden. Rather than in those other cases, there were often legitimate penological interests involved, like moving a prisoner from cell to cell efficiently or things like this. Here, Officer Escamilla departed from that legitimate penological interest and targeted Mr. Harris' Quran. I see that my time is almost up but I would like to briefly address qualified immunity. Actions by the government that target the religious are odious to the Constitution and no reasonable correctional officer could think that degrading the Quran was lawful. In Rasel v. Rumsfeld, the D.C. Circuit held that the plaintiffs who alleged that the Quran had been thrown in the toilet as well as other acts against the Quran, the court held that such activities, if true, constitute a direct affront to this nation's most cherished constitutional traditions. And for these reasons, Your Honor, we ask that you deny qualified immunity to Officer Escamilla. Additionally, Officer, qualified immunity is not available for injunctive relief, declaratory relief or under the Bain Act. Thank you. Thank you, Counsel. The case just started to be submitted and I want to thank you for your pro bono representation. It's a great service to the court. Thank you.
judges: Thomas, Friedland, Olguin